724 May 29, 2025 No. 460

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HART HOLDEN STONE,
*Defendant-Appellant.*

Clatsop County Circuit Court
22CR25622; A180667

Kirk C. Wintermute, Judge.

Argued and submitted December 19, 2024.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, Pagán, Judge, and Armstrong, Senior Judge.

POWERS, P. J.

Conviction for first-degree robbery reversed and remanded for a new trial on the lesser-included offense of attempted first-degree robbery; remanded for resentencing; otherwise affirmed.

**POWERS, P. J.**

Defendant challenges his conviction for first-degree robbery, ORS 164.415, raising five assignments of error. The first two assignments are directed at the sufficiency of the evidence to enter a conviction for first-degree robbery. In response, the state concedes that the evidence was legally insufficient to convict defendant of first-degree robbery, but it urges us to remand for entry of judgment for the lesser-included offense of attempted first-degree robbery. For the reasons explained below, we accept the state's concession of error but disagree with the proposed remedy. Instead, we remand for a new trial on the lesser-included offense because the jury did not consider that offense and did not necessarily find the elements to establish it.

In his remaining assignments of error, defendant argues that all of his convictions should be reversed because the trial court erred in denying his motion for a mistrial after a witness commented on defendant's right to remain silent, and that the court plainly erred by not *sua sponte* declaring a mistrial based on improper closing arguments. As explained below, we conclude that the court acted within its discretion in handling the witness's comment and did not plainly err by failing to declare a mistrial based on the prosecutor's arguments. Accordingly, we reverse and remand for a new trial on attempted first-degree robbery, remand for resentencing, and otherwise affirm.

## I.   BACKGROUND

Defendant was charged with first-degree robbery and several other crimes related to an incident at a convenience store in Seaside. At trial, the state presented the following evidence to the jury. Defendant entered a convenience store wearing a black sweatshirt and facemask. He approached the cash register, raised a knife from his side, and told the store owner, L, to give him the money from the register. Defendant was about arm's length away from L, and L responded by holding up a nearby folded step stool as if he planned to throw it at defendant. Defendant, who did not make contact with L, grabbed the tip jar and ran out of the store. L chased after defendant, and a group of bystanders

joined the chase and tackled defendant. Ultimately, defendant was arrested by a nearby police officer, and the tip jar was returned to the store owner.

Much of that evidence was presented through the testimony of L, who was the state's main witness at trial. During redirect, the prosecutor asked L to stand up and show the jury how defendant was holding the knife when he demanded the money from the register. L responded:

> "A little than this but still—I mean probably it was up here like—it—it got from here to here. Even if it's just to scare somebody, still it's not where—well, first of all, I mean, we can—if that's not accurate you're more than welcome to tell your story too."

Defendant immediately objected and explained that he had a matter for the court. The jury was excused, and defendant moved for a mistrial on the ground that the witness commented on defendant's right to remain silent, irreparably harming defendant's case. The trial court denied the motion, ruling that it was an improper but off-hand comment that could be cured with a cautionary instruction later on in the trial. When the jury returned, the state called its next witness; the court did not give a cautionary instruction at that time.

After the state rested its case, the parties discussed jury instructions. Initially, the state requested that the trial court instruct the jury that, in order to convict for first-degree robbery, it must find that defendant "use[ed] or threaten[ed] the immediate use" of physical force. However, the prosecutor was relying on a different version of the indictment than had been filed with the court. The actual indictment alleged use of force but not threatened use—specifically, that defendant "did unlawfully and knowingly, while in the course of committing or attempting to commit theft, with the intent of compelling [L] to deliver property, use physical force upon [L] and use a dangerous weapon." The court modified the state's proposed instruction to track the language of the indictment and require that defendant knowingly "use[d] physical force upon" L.

During those same discussions, defendant requested that the jury also be instructed on the lesser-included offense

of attempted first-degree robbery. The state did not object, and the parties debated how to instruct on the elements of the inchoate crime. Ultimately, the jury was instructed that "the charged crime of Robbery in the First Degree has a lesser-included offense of *** Attempted Robbery in the First Degree," and it received instructions on the crime of attempt.

The trial court's instructions also addressed a defendant's right not to testify. The court told the jury:

> "A defendant has an absolute constitutional right not to testify. Therefore, a defendant's decision not to testify cannot be considered as an indication of guilt. It should not be commented on or in any way considered by you in your deliberations. A defendant also has an absolute constitutional right not to present any evidence. Therefore, a defendant's decision not to present any evidence cannot be considered as an indication of guilt. It should not be commented on or in any way considered by you in your deliberations."

After the jury was instructed, the parties proceeded to closing arguments. During the state's closing, the prosecutor walked through the elements of the charged offenses and argued that the state had proved them with direct and circumstantial evidence. The direct evidence, the prosecutor asserted, was the testimony of L who "was right there. He told you exactly what went down." The prosecutor concluded by arguing, "So, uh, in essence, ladies and gentlemen, I'd ask you to recall the testimony of [L], and as the Judge said, the testimony of any one witness whom you believe is enough to prove anything at issue and he was a perfectly believable witness, I submit, and—and, uh, I would ask you to find the defendant guilty of these charges."

Defendant's closing argument focused on the fact that he had not actually used the knife and suggested that even L had not believed that defendant intended to follow through by using the knife. Defendant argued, "[W]ell then why didn't he use it there? I mean, thank God he didn't use it there, but why didn't he use it there? Was he hesitant? Was he really thinking through that this is what he was going to do? That is why I submit to you that when you get into the jury room and look at this the crime that probably most

fits is Attempted Robbery in the First Degree." Defendant again reiterated that even L did not perceive that defendant intended to follow through and "what's lacking there is that there was really true intent to follow-through on that."

In rebuttal, the prosecutor concluded his arguments by referring to *voir dire* and an exchange that occurred with a prospective juror, Juror 509, who had expressed the view that he was "very jaded against the government and a lot of the court systems in the higher municipalities are screwing over the world," that he could not be a fair juror because the system was not "just and true," and that the "main goal" of the attorneys in the case is to win. The prosecutor stated:

> "[Defense counsel has] done a good job for the defendant, uh, and, uh, he's—he's done his duty here and, uh, if you see Mr.—Juror 509, I think that was the guy's number, that was—the fellow back here, uh, just—just tell him that the DA's job is actually to seek justice and that's what I'm asking you to do is to seek justice. Seek justice for the defendant, seek justice for the State of Oregon and to seek justice for [L]."

The jury was then sent back to deliberate. During that process, the jury asked for a definition of physical force, which had not been included in the original jury instructions. The court then further instructed the jury that physical force is "[f]orce consisting in a physical act."

The jury found defendant guilty of first-degree robbery, unlawful use of a weapon, and menacing. Defendant filed a timely appeal and now advances five assignments of error.

## II.  ANALYSIS

### A.  *Sufficiency of Evidence to Prove First-Degree Robbery*

In his first two assignments, defendant argues that the trial court plainly erred by failing to *sua sponte* enter a judgment of acquittal on the first-degree robbery charge because the evidence was legally insufficient to establish the elements of that offense, including defendant's use of force. The state agrees that the evidence was legally insufficient to show that defendant used physical force and that the conviction for first-degree robbery should be reversed.

Where the parties' arguments diverge is the proper remedy on appeal: The state proposes that we remand with instructions for the trial court to enter a conviction for attempted first-degree robbery, a lesser-included offense. Defendant requests that we remand for a new trial on attempted first-degree robbery.

A motion for a judgment of acquittal tests the sufficiency of the evidence. *See State v. Modrzejewski*, 311 Or App 739, 741-42, 490 P3d 172 (2021) (explaining that our task in reviewing a motion for a judgment of acquittal is to "determine whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks omitted)). The elements of first-degree robbery are set forth in ORS 164.415(1), which provides that a person commits that offense "if the person violates ORS 164.395 and the person: (a) Is armed with a deadly weapon; (b) Uses or attempts to use a dangerous weapon; or (c) Causes or attempts to cause serious physical injury to any person." ORS 164.395, in turn, provides:

"(1)   A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a)   Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b)   Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle."

As noted above, the charging instrument in this case did not allege that defendant threatened the immediate use of physical force, which is one way of violating ORS 164.395; rather, it alleged that defendant did "use physical force." As the state correctly concedes, the evidence did not support that theory. It is not enough, as the trial court defined physical force, that there be a physical act using

force. Rather, as we explained in *State v. Johnson*, 215 Or App 1, 5, 168 P3d 312, *rev den*, 343 Or 366 (2007), the "force must be used on the victim." Because there is no evidence that defendant actually made contact with L—that is, no force was used on the victim—defendant was entitled to a judgment of acquittal on the offense of first-degree robbery as it was charged. We, therefore, accept the state's concession of error and agree that, under the circumstances, it is appropriate to exercise our discretion to correct it in light of the gravity of the error. *See, e.g.*, *State v. Reynolds*, 250 Or App 516, 522, 280 P3d 1046, *rev den*, 352 Or 666 (2012) (similarly concluding that it was appropriate to exercise discretion to correct a plain error where the evidence was legally insufficient to support the conviction).

That conclusion brings us to the parties' point of disagreement, which is the appropriate remedy. We have authority to remand for entry of a conviction for a lesser-included offense under Article VII (Amended), section 3, of the Oregon Constitution, which provides that a reviewing court shall direct the entry of judgment where it "shall be of [the] opinion that it can determine what judgment should have been entered in the court below." However, as we previously observed in *Modrzejewski*, 311 Or App at 743, the "precise scope of our authority under this provision is not clear." The parties' dispute in this case reflects that lack of clarity: They agree that the court has authority to direct entry of judgment for lesser-included offenses and that there must at least be legally sufficient evidence in the record to support a conviction on that lesser-included offense. *See State v. Hubbell*, 371 Or 340, 361, 537 P3d 503 (2023) (observing that entry of a conviction on a lesser-included offense "raises two distinct questions: (1) whether the evidence is sufficient to support a conviction for the inchoate crime of attempted delivery, and (2) if so, whether this court should direct that the conviction be entered, as opposed to remanding for the [factfinder] to consider in the first instance whether to convict [the] defendant of that crime"). The parties also agree that there is legally sufficient evidence in the record for a factfinder to find defendant guilty of a lesser-included offense. But that is where their agreement ends. As for whether the court should direct the conviction to be entered, they argue

for different legal standards, cite entirely different cases, and offer fundamentally different understandings of how we should approach that question.

To provide context for their competing arguments, we start with the law governing the crime of attempt before turning back to Article VII (Amended), section 3.

ORS 161.405(1) provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." The crime of attempt can be broken into two elements: (1) intentional conduct that (2) constitutes a substantial step toward the commission of the crime. *Hubbell*, 371 Or at 361-62. The "intentional conduct" element requires that the person "act[] with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7). The "substantial step" element requires that the person's conduct "advance[] the criminal purpose charged" and "provide[] verification of the existence of that purpose." *Hubbell*, 371 Or at 362.

Under that definition, an attempt to commit a crime requires a jury to find intentional conduct—a conscious objective—regardless of whether the crime being attempted would itself require a conscious objective. *See generally* ORS 161.095(1) (providing that the minimal requirement for criminal liability is the performance of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing); ORS 161.085 (describing the different accompanying mental states for material elements of offenses).

By statute, though, an attempt crime is treated as a lesser-included offense of the charged offense, regardless of whether the mental state requirements are the same for the charged offense and an attempt to commit that crime. *See* ORS 136.465 ("In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."); ORS 136.460(1) ("Upon a charge for a crime consisting of different degrees, the jury may find the defendant not

guilty of the degree charged in the accusatory instrument and guilty of any degree inferior thereto or of an attempt to commit the crime or any such inferior degree thereof."). If the jury is asked to consider the charged offense and the attempted crime in the alternative, the jury first considers the charged offense, and then "[o]nly if the jury finds the defendant not guilty of the charged offense may the jury consider a lesser included offense." ORS 136.460(2).

Here, the jury was instructed consistently with those requirements, and the verdict form provided that if the jury could not reach a verdict on robbery in the first degree, then it may consider the lesser-included offense of attempted first-degree robbery. The jury, however, never reached the question on the verdict form regarding the lesser-included offense of attempt, because it found defendant guilty of the completed offense. In defendant's view, that is significant because the two crimes had different mental states: Whereas the completed crime was charged with a "knowingly" mental state in this case, the lesser-included offense required the jury to find an intentional mental state—*i.e.*, that defendant actually intended to use physical force.

The state, on the other hand, argues that the jury necessarily found defendant guilty of an attempt crime— including that defendant engaged in intentional conduct— when it convicted him of the completed offense. In support of that argument, the state cites *State v. Lopez*, 151 Or App 138, 142, 949 P2d 1237 (1997), *rev den*, 326 Or 465 (1998), a case in which we remanded for entry of conviction for an attempted version of the charged crime because the jury had "necessarily determined that [the] defendant had the requisite intent" when it convicted him of the completed offense. From that case and others in which we remanded for entry of a conviction on a lesser-included offense, the state contends that a conviction on the completed offense means, as a matter of law, that the jury convicted on the lesser-included offense. *See State v. Madison*, 303 Or App 737, 742, 466 P3d 92 (2020) (reversing and remanding for entry of judgment convicting the defendant of two counts of attempted promoting prostitution where the evidence was legally insufficient to establish the completed offense of promoting prostitution

because the prostitution enterprise was part of a sting operation and not an actual enterprise). In the state's view, that same rule should apply even where the conviction for the completed offense was erroneous, as it was in this case.

We acknowledge that our case law has not been especially clear when we will remand for entry of a judgment on the lesser-included offense of attempt. We take this opportunity to clarify that the standard is not satisfied simply because the evidence is sufficient to establish the lesser-included offense. To be sure, that is a necessary predicate to the question of whether a court should direct the entry of judgment—we would not do so unless there is evidence to support it.

Rather, if the evidence is sufficient to support a finding of the lesser-included offense—and we agree with the parties' positions that it is here—only then do we consider whether we should remand for the entry of judgment of conviction for the lesser-included offense. In answering that question, we are mindful of the jury's role in finding the elements of a crime in the first instance, and we remand for the entry of a judgment of conviction on a lesser-included attempted offense only if we can say that the factfinder would "necessarily have found [the] defendant guilty" of the lesser-included inchoate offense. *State v. Raygosa*, 320 Or App 77, 83, 512 P3d 824, *rev den*, 370 Or 455 (2022) (citing *State v. Burgess*, 240 Or App 641, 654, 251 P3d 765 (2011), *aff'd*, 352 Or 499, 287 P3d 1093 (2012) (declining to affirm a conviction on an alternative theory of liability where, "[a]lthough there was arguably sufficient evidence from which the jury could have made that determination, it did not do so either expressly or by necessary implication in rendering its verdict")); *see also State v. Wesley*, 326 Or App 500, 510, 533 P3d 786, *rev den*, 371 Or 511 (2023) (explaining that "we must limit our exercise of our power under Article VII (Amended), section 3, to instances where the factfinder necessarily found the elements of the lesser-included offense at issue"). Importantly, contrary to the state's contention, a conviction for a completed offense does not mean, as a matter of law, that the jury necessarily found the elements of the attempt crime, which can have a different mental state from the completed offense.

Here, though, we are mindful of another important consideration, which is dispositive in this case: The jury appears to have been operating under an incorrect understanding of the primary offense when it made its findings. As explained earlier, the case went to the jury on a theory of use of physical force that was not supported by the evidence, the jury was given an instruction that did not require use of force on the victim, and the jury found defendant guilty notwithstanding the lack of any evidence that such force was used on L—all of which suggests that the jury did not understand what was required in order to commit the charged offense of first-degree robbery.

For that reason alone, we will not direct the entry of judgment for attempted first-degree robbery in this case. Even if we could say on this record that the jury necessarily found that defendant had a conscious objective to commit first-degree robbery,[1] we cannot be confident that the jury made its findings with a correct understanding of what constitutes that crime and, specifically, use of physical force. Without that confidence, we are not "of [the] opinion that [we] can determine what judgment should have been entered in the court below," Or Const, Art VII (Amended), § 3, because we do not know what verdict the jury would have rendered had it actually reached the lesser-included offense and considered it with a correct understanding of the law. Accordingly, we reject the state's proposed remedy and instead remand for a new trial on the charge of attempted first-degree robbery.

## B.  *Failure to Declare a Mistrial*

In defendant's remaining assignments of error, he argues that he is entitled to a new trial on all counts because the court should have granted his motion for a mistrial or declared *sua sponte* a mistrial at different points in the trial. As explained below, we reject those arguments and therefore affirm the judgment as to his remaining convictions for unlawful use of a weapon and menacing.

---

[1] That question is itself complicated by the different mental states between the charged offense and the attempt crime. As in *Modrzejewski*, we "leave for another day whether remanding with instructions to enter a crime for an attempt is ever possible after a jury finds a defendant guilty for a crime that was pleaded with a knowing mental state." 311 Or App at 744 n 4.

1.  *Witness comment on defendant's right to remain silent*

In defendant's third assignment, he argues that the court erred in its handling of his objection to L's statement that defendant was "welcome to tell your story too." According to defendant, L's statement was an improper comment on his right to remain silent that could only be remedied by a contemporaneous instruction to the jury; and, having failed to give an instruction immediately after the statement was made, the court was required to grant his motion for a mistrial.

We review the denial of a motion for mistrial for an abuse of discretion, and such a denial does not constitute an abuse of discretion unless the effect was to deny a defendant a fair trial. *See State v. Woodall*, 259 Or App 67, 74, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014) (observing that a motion for mistrial is reviewed for abuse of discretion, which is a "daunting standard of review that gives the trial court's decision great deference"); *State v. Chitwood*, 370 Or 305, 311, 518 P3d 903 (2022) (noting that the denial of a mistrial motion "would not constitute an abuse of discretion unless the effect of the prosecutor's misconduct was to deny a defendant a fair trial"). We have explained that a "prosecutor's or a witness's reference to the defendant having exercised a constitutional right—like the right to remain silent or to obtain counsel—may prejudice the defendant's ability to have a fair trial if it raises the impermissible inference that the defendant did so because" he, she, or they were guilty. *State v. Hunt*, 297 Or App 597, 600-01, 442 P3d 232 (2019). If a witness's reference raises an impermissible inference that the defendant invoked the right to remain silent because the defendant was guilty, the question is whether that prejudicial effect may be cured by an appropriate jury instruction—*i.e.*, "whether the purportedly curative instruction was sufficient to unring the bell." *Id.* at 605 (quoting *State v. White*, 303 Or 333, 342, 736 P2d 552 (1987); internal quotation marks omitted).

In this case, we disagree with defendant's contention that the trial court's only permissible responses to L's statement were to immediately give a curative instruction

or declare a mistrial. L's reference to defendant testifying was an unprompted, fleeting reference made by a lay witness. The court's choice to rely on cautionary instructions at the end of the trial regarding defendant's "absolute constitutional right not to testify" and "absolute right not to present any evidence," rather than drawing more attention to L's comment with a contemporaneous curative instruction, was a permissible one given the nature of the passing reference in the context of the trial as a whole. Thus, the court did not err by denying defendant's motion for a mistrial.

### 2. *Improper closing argument*

In defendant's final two assignments, he argues that he was denied the right to a fair trial as a result of the prosecutor vouching for L by arguing that he was "a perfectly believable witness, I submit," and by referring in rebuttal to Juror 509 and the prosecutor's job to "seek justice," which were facts not in evidence and encouraged the jury to decide the case on an improper basis. Defendant did not object on those grounds below and asks us to reverse on the basis of plain error.

For a defendant to prevail on an unpreserved challenge to a prosecutor's statements during closing argument, it must be "beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *Chitwood*, 370 Or at 312 (internal quotation marks omitted); *see also State v. Perez*, 373 Or 591, 605, ___ P3d ___ (2025) (explaining that *Chitwood* "adhere[s] to the requirement that a plain error be an error of law" and that, for prosecutorial misconduct to satisfy that standard, a defendant must establish that "the trial court's only lawful option—had the defendant objected—would have been to declare a mistrial, because no curative instruction would have been effective"). That is, "a defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Chitwood*, 370 Or at 312. "[P]rosecutorial statements that were improper but curable are not an appropriate subject of plain-error review, because, in such circumstances,

the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis omitted).

Any prejudice from the prosecutor's statements in closing and rebuttal did not rise to the level that it could not have been cured if defendant had objected. To the extent that the prosecutor conveyed a personal belief that L was credible, an objection would have allowed the prosecutor to clarify that he was asking the jury to rely on the evidence presented at trial to assess L's credibility, or the trial court could have provided a curative instruction to the same effect. *See State v. Bonczkowski*, 337 Or App 701, 711-12, 564 P3d 481 (2025) (concluding that those options would have cured any prejudice from a prosecutor's statements that she believed the victim's report of the defendant's assault).

The prosecutor's rebuttal likewise did not result in the type of prejudice that could not be cured with an appropriate curative instruction. The prosecutor argued that defense counsel had done a "good job for the defendant" and "done his duty here," and that if the jury were to see Juror 509, tell him "that the DA's job is actually to seek justice and that's what I'm asking you to do is to seek justice. Seek justice for the defendant, seek justice for the State of Oregon and to seek justice for [L]." According to defendant, those statements relied on facts not in evidence and communicated that the prosecutor had a higher duty than defense counsel as the one seeking justice. That line of argument, although improper, is not the type of error that could not have been adequately addressed had defendant objected. *See Perez*, 373 Or at 618, 620 (Bushong, J., concurring) (observing that the reason a court is conducting a trial in a particular case is rarely, if ever, relevant, and that prosecutors should resist the temptation to "level the playing field"); *Durant*, 327 Or App at 365 (concluding that prosecutor's statements, although improper, were curable and did not deprive the defendant of a fair trial). Accordingly, we reject defendant's final two assignments of error.

Conviction for first-degree robbery reversed and remanded for a new trial on the lesser-included offense of attempted first-degree robbery; remanded for resentencing; otherwise affirmed.